IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA § | | Civil Action No. _____ |
| *ex. rel.* [UNDER SEAL] § | | |
| *Plaintiff / Relator* § | | FILED UNDER SEAL |
| § | | PURSUANT TO |
| *v.* § | | 31 U.S.C. §§ 3730(b)(2) |
| § | | AND COURT ORDER |
| [UNDER SEAL] § | | |
| *Defendants,* § | | JURY TRIAL DEMANDED |

## RELATOR'S ORIGINAL COMPLAINT

The United States of America, by and through qui tam Relator, Michael Siemer, brings this action under 31 U.S.C. §§ 3729-32 (The "False Claims Act") to recover from Cepeda Drywall, LLC ("Cepeda Drywall") for all damages, penalties, and other remedies available under the False Claims Act on behalf of the United States and would show unto the Court the following:

### I.  PARTIES

1. Relator Michael Siemer ("Relator") is a resident of Harris County, Texas. Plaintiff can be served through his counsel of record, the Pinkerton Law Firm, at 550 Westcott St., Ste. 590, Houston, TX 77007.

2. Defendant Cepeda Drywall, LLC is small, privately-owned, drywall company that provides drywall installation services on various construction projects. Cepeda Drywall is a Texas corporation headquartered in Harris County, Texas. Cepeda Drywall is owned by Ascencion Cepeda, who is an individual that resides in Harris County, Texas. Defendant can be served through its registered agent, Ascencion Cepeda, at 1806 Little York Rd., Houston, TX 77093.

### II.  JURISDICTION AND VENUE

3. This Court maintains subject matter jurisdiction over this action pursuant to 31

U.S.C. §3732(a) (False Claims Act) and 28 U.S.C. § 1331 (Federal Question).

4.  Venue is proper in this Court under 31 U.S.C. § 3732(a) because Cepeda Drywall is headquartered in the Southern District of Texas and does business in the Southern District of Texas.

5.  Relator is the original source of and has direct and independent knowledge of all publicly disclosed information that the allegations herein are based upon. Relator has personally gathered all the documentation substantiating the allegations herein. Relator has met all procedural requirements of 31 U.S.C. §3730(b)(2) prior to filing this Complaint.

### III.  MISNOMER / ALTER EGO

6.  In the event any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification", "misnomer" and/or such parties are/were "alter egos" of parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

### IV.  FACTUAL ALLEGATIONS

7.  On March 27, 2020, the United States President signed into law the "Coronavirus Aid, Relief, and Economic Security Act," also known as the "CARES Act." The CARES Act authorized the Small Business Administration ("SBA") to administer forgivable loans to small businesses through the Paycheck Protection Program ("PPP").

8.  These PPP loans were originally available to any business that employed fewer than 500 employees. The CARES Act specifically states that independent contractors should not be counted as employees because they can apply for a PPP loan on their own.[1] The CARES Act provided further instruction regarding how an employer can determine *whether* they qualify, and

---
[1] 85 F.R. 20811 § III.2.h.

if so, *how* the employer should calculate the maximum loan amount.[2] Finally, the CARES Act specified that at least 75% of the PPP loan proceeds shall be used for payroll costs.[3]

9. On the PPP application, an authorized representative of the applicant must provide documentation concerning the number of "full-time equivalent employees on payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight week period following this loan will be provided to the lender."[4] Each applicant must also certify, in good faith, that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects."[5]

10. Unfortunately, PPP loan fraud has been rampant across the Country—costing the United States Government and taxpayers hundreds of millions of dollars. Perpetrators, fraudsters, and scammers systematically schemed to steal funds that could have otherwise gone to qualified companies in need. Recently, a study was completed by the University of Texas concluded that over 15% of all the PPP loans were fraudulent—amounting to over 76 billion dollars in theft of taxpayer money.

### 15% of Paycheck Protection Program Loans Could Be Fraudulent, Study Shows

Some $76 billion of the program's $800 billion in loans may have been taken improperly, a new paper concludes.

*Image 1: Article Headline*

---

[2] 85 F.R. 20811 § III.2.h.
[3] 85 F.R. 20811 § III.2.r.
[4] 85 F.R. 20811 § III.2.s (iv).
[5] 85 F.R. 20811 § III.2.s (vii).

> A new academic working paper released on Tuesday contains an estimate: Around 1.8 million of the program's 11.8 million loans — more than 15 percent — totaling $76 billion had at least one indication of potential fraud, the researchers concluded.
>
> "There's been a lot of anecdotes about fraud, but the tricky thing about anecdotes is that it's very difficult to put them together and get at the scale of what's going on," said Samuel Kruger, an assistant professor of finance at the University of Texas at Austin's McCombs School of Business and one of the paper's authors. "We wanted to look for patterns in the data."

*Image 2:  Caption from Article*

11. Upon information and belief, Cepeda Drywall misrepresented the number of its employees on the PPP application. Specifically, Cepeda Drywall represented that it had approximately 300 employees, and therefore qualified for a loan exceeding $3.4 Million:

| Company Name | City | State | ZIP | PPP Loan | Jobs | Industry |
|---|---|---|---|---|---|---|
| Cepeda Drywall LLC | HOUSTON | TX | 77093 | $3,421,740 | 300 | Drywall and Insulation Contractors |

*Image 3: Data representing Cepeda Drywall's PPP loan.[6]*

12. Cepeda Drywall's PPP loan was so large that it made local headlines:

**Houston Republic**

# Cepeda Drywall, LLC receives a PPP loan between $2M-$5M on May 1

BUSINESS

*Image 4: News headline reporting on the size of Cepeda Drywall's PPP loan.[7]*

---

[6] *Available at* https://www.federalpay.org/paycheck-protection-program/tx/900.
[7] *Available at* https://houstonrepublic.com/stories/557584366-cepeda-drywall-llc-receives-a-ppp-loan-between-2m-5m-on-may-1?utm_source=dlvr.it&utm_medium=facebook.

13. Cepeda Drywall in fact has nowhere near 300 employees and its payroll calculations cannot and should not support a PPP loan exceeding $3.4 Million. Indeed, discovery conducted in a concurrent lawsuit supports Relator's assertion that Cepeda Drywall has fewer than 300 employees. In that lawsuit, Cepeda Drywall denied even having 100 employees:

> **REQUEST FOR ADMISSION NO. 81:** Admit that Cepeda Drywall, LLC has over 100 employees who receive W2's from Cepeda Drywall, LLC.
>
> **Response:** Deny.

*Image 5: Cepeda Drywall's Responses to Plaintiff's Third Requests for Admission*

14. It is questionable whether Cepeda Drywall has any employees, particularly considering that the company owner, Ascencion Cepeda, does not count himself as an employee of Cepeda Drywall:

> **REQUEST FOR ADMISSION NO. 57:** Admit that Ascencion Cepeda is a W2 employee of Cepeda Drywall, LLC.
>
> **Response:** Deny.
>
> **REQUEST FOR ADMISSION NO. 58:** Admit that Ascencion Cepeda is the sole owner of Cepeda Drywall, LLC.
>
> **Response:** Admit.

*Image 6: Cepeda Drywall's Responses to Plaintiff's Third Requests for Admission*

15. Any representations by Cepeda Drywall to the Federal Government concerning a headcount of 300 employees, or providing payroll calculations based on 300 employees, are inaccurate and false. Upon information and belief, such false representations were made by Cepeda Drywall on its initial PPP application, or on its PPP loan forgiveness application, to justify a forgivable loan exceeding $3.4 Million. This lawsuit seeks the recovery of such damages for the benefit of the United States based on Cepeda Drywall's false representations.

16.     *Section IV* is hereby incorporated into all other areas of this Petition by reference, including but not limited to *Section V* below.

### V.     CAUSE OF ACTION

*Violation of the False Claims Act (31 U.S.C. § 3729(a)(1)(A), (B)).*

17.     The Relator incorporates and re-alleges all of the foregoing allegations herein.

18.     Based upon the acts described above, Cepeda Drywall knowingly violated Federal Law by: (a) knowingly presenting, or causing to be presented, a false or fraudulent claim for payment or approval; or (b) knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim. 31 U.S.C. § 3729(a)(1)(A), (B).

19.     Specifically, Cepeda Drywall falsely and fraudulently stated in its PPP initial application, its PPP forgiveness application, and other government documents, either that it had roughly 300 employees, or provided payroll calculations based on 300 employees, when in fact it such representations were false.

20.     The United States, unaware of the falsity of these claims, records, and statements made by the Defendant Cepeda Drywall, and in reliance on the accuracy thereof, paid money to Cepeda Drywall based on such fraudulent claims. The United States and the general public have been damaged as a result of Defendant's violations of the False Claims Act.

### VI.     PRAYER

21.     For the reasons set forth above, the Relator, on behalf of the United States, respectfully requests this Court to find that Defendant has damaged the United States Government as a result of its conduct under the False Claims Act.

22.     The Relator prays that judgment enter against Defendant for all applicable damages, including but not limited to the following:

a. Actual damages in an amount sufficient to reimburse the United States Government for any moneys it paid to Cepeda Drywall.

b. Civil Penalties in an amount of three times the actual damages suffered by the Government.

c. Relator seeks a fair and reasonable amount of any award for his contribution to the Government's investigation and recovery pursuant to 31 U.S.C. §§ 3730(b) and (d) of the False Claims Act.

d. Relator seeks a fair and reasonable amount of any award for his contribution to the Government's investigation and recovery pursuant Fraud Enforcement Recovery Act.

e. Relator seeks a fair and reasonable amount of any award for his contribution to the Government's investigation and recovery pursuant to 48 CFR § 3.502-2.

f. Attorney's fees and costs awarded to Relator.

g. Pre-judgment and post judgment interest.

h. All other relief on behalf of the Relator and/or United States Government to which they may be entitled at law or equity.

Respectfully Submitted,

**THE PINKERTON LAW FIRM, PLLC**

*/s/ Chad Pinkerton*
**Chad Pinkerton**
Tx. State Bar No. 24047199
cpinkerton@chadpinkerton.com
The Pinkerton Law Firm, PLLC
550 Westcott, Suite 590
Houston, Texas 77007
713-360-6722 (office)
713-360-6810 (facsimile)

**ATTORNEY FOR PLAINTIFFS**

## **CERTIFICATE OF SERVICE**

I, Chad Pinkerton, certify that a true and correct copy of the foregoing has been served on counsel for all parties via the Court's CM/ECF system this the 24th day of September 2021.

Additionally, the following parties were served via CMRRR:

Hon. Merrick Garland Attorney General of the United States
U.S. Dept. of Justice
950 Pennsylvania Avenue
NW Washington, DC 20530-0001

Hon. Jennifer Lowery
Acting U.S. Attorney for the Southern District of Texas
1000 Louisiana, Ste. 2300
Houston, TX 77002

                                           */s/ Chad Pinkerton*
                                           Chad Pinkerton